# FRENCH v. BARBER ASPHALT PAVING COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 498. Argued February 25, 26, 27, 1901.—Decided April 29, 1901.

In this case the court proceeds on the assumption that the legal import of the phrase "due process of law" is the same both in the Fifth and in the Fourteenth Amendments to the Constitution of the United States; and that it cannot be supposed that it was intended by the Fourteenth Amendment to impose on the States, when exercising their powers of taxation, any more rigid or stricter curb than that imposed on the Federal Government by the Fifth Amendment in a similar exercise of power.

It was not the intention of the Fourteenth Amendment to subvert the systems of the States pertaining to general and special taxation: that Amendment legitimately operates to extend to the citizens and residents of the States, the same protection against arbitrary state legislation, affecting life, liberty and property, as is afforded by the Fifth Amendment against similar legislation by Congress, and the Federal Courts ought not to interfere when what is complained of is the enforcement of the settled laws of the State, applicable to all persons in like circumstances and conditions, but only when there is some abuse of law, amounting to confiscation of property, or deprivation of personal rights. ·

The conclusions reached by this court in many cases cited and summarized by the court in its opinion are thus stated by two writers, (Cooley and Dillon) whose views this court adopts: "The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited. The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits. The whole cost in other cases is levied on lands in the immediate vicinity of the work. In a constitutional point of view, either of these methods is admissible, and one may sometimes be just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule." "The courts are very generally agreed that the authority to require the property specially benefited, to bear the expense of local improvements is a branch of the taxing power, or included within it. . . . Whether the expense of making such improvements shall be paid out of the gen-

eral treasury, or be assessed upon the abutting or other property spe-
cially benefited, and, if in the latter mode, whether the assessment shall
be upon all property found to be benefited, or alone upon the abuttors,
according to frontage or according to the area of their lots, is, according
to the present weight of authority, considered to be a question of legis-
lative expediency."

*Norwood* v. *Baker*, 172 U. S. 269, considered, and held not to be inconsistent
with these views.

THIS was a suit instituted in the circuit court of Jackson
County, Missouri, by the Barber Asphalt Paving Company, a
corporation whose business it was to construct pavements com-
posed of asphalt, against Margaret French and others, owners
of lots abutting on Forest avenue in Kansas City, for the pur-
pose of enforcing the lien of a tax bill issued by that city in
part payment of the cost of paving said avenue.

The work was done conformably to the requirements of the
Kansas City charter, by the adoption of a resolution by the
common council of the city declaring the work of paving the
street, and with a pavement of a defined character, to be neces-
sary, which resolution was first recommended by the board of
public works of the city.    This resolution was thereupon pub-
lished for ten days in the newspaper doing the city printing.
Thereafter the owners of a *majority* of front feet on that part
of the street to be improved had the right, under the charter,
within thirty days after the first day of the publication of the
resolution, to file a remonstrance with the city clerk against
the proposed improvement, and thereby to divest the common
council of the power to make the improvement, and such prop-
erty owners had the right, by filing within the same period a
petition so to do, to have such street improved with a different
kind of material or in a different manner from that specified in
such resolution.    In this instance neither such a remonstrance
nor petition was filed, and the common council, upon the recom-
mendation of the board of public works, enacted an ordinance
requiring the construction of the pavement.    The charter re-
quires that a contract for such work shall be let to the lowest
and best bidder.    Thereupon bids for the work were duly adver-
tised for, and the plaintiff company, being the lowest and best

bidder therefor, a contract was, on July 31, 1894, entered into between Kansas City and the plaintiff for the construction of said pavement.

The contract expressly provided that the work should be paid for by the issuance of special tax bills, according to the provisions of the Kansas City charter, and that the city should not in any event be liable for or on account of the work. The cost of the pavement was apportioned and charged against the lots fronting thereon according to the method prescribed by the charter, which is that the total cost of the work shall be apportioned and charged against the lands abutting thereon according to the frontage of the several lots or tracts of land abutting on the improvement. The charge against each lot or tract of land was evidenced by a tax bill. The tax bill representing the assessment against each lot was, by the charter, made a lien upon the tract of land against which it was issued, and was *prima facie* evidence of the validity of the charge represented by it. Such lien can be enforced only by suit in a court of competent jurisdiction, against the owners of the land charged. No personal judgment was authorized to be rendered against the owner of the land. The right was expressly conferred on the owner of reducing the amount of the recovery by pleading and proving any mistake or error in the amount of the bill, or that the work was not done in a good and workmanlike manner.

The defendants pleaded and contended that the contract offered in evidence was a contract to construct the pavement and maintain and keep the street in repair for five years, and was contrary to the charter of Kansas City, void and of no effect; and that the charter of Kansas City purports to authorize the paving of streets and to authorize special tax bills therefor, charging the cost thereof on the abutting property according to the frontage, without reference to any benefits to the property on which the charge was made and the special tax bills levied, and that such method of apportioning and charging the cost of the pavement was contrary to and in violation of the Fourteenth Amendment to the Constitution of the United States.

The judgment of the circuit court of Jackson County was for the plaintiff company for the amount due on the tax bill and

for the enforcement of the lien.   From this judgment an appeal was taken to the Supreme Court of Missouri, and, on November 13, 1900, the judgment of the circuit court was affirmed, and thereupon a writ of error from this court was allowed.

*Mr. Henry N. Ess* for plaintiffs in error.

*Mr. William C. Scarritt* for defendant in error.   *Mr. Edward L. Scarritt,* *Mr. John K. Griffith* and *Mr. Elliott Hamilton Jones* were on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

In its opinion in this case the Supreme Court of Missouri said that " the method adopted in the charter and ordinance of Kansas City of charging the cost of paving Forest avenue against the adjoining lots according to their frontage had been repeatedly authorized by the legislature of Missouri, and such laws had received the sanction of this court in many decisions.   *St. Louis* v. *Allen,* 53 Mo. 44; *St. Joseph* v. *Anthony,* 30 Mo. 537; *Neenan* v. *Smith,* 50 Mo. 525; *Kiley* v. *Cranor,* 51 Mo. 541; *Rutherford* v. *Hamilton,* 97 Mo. 543; *Moberly* v. *Hogan,* 131 Mo. 19; *Farrar* v. *St. Louis,* 80 Mo. 379."

In the last-mentioned case Judge Norton for the court said:

" The liability of lots fronting on a street, the paving of which is authorized to be charged with the cost of the work according to their frontage, having been thus so repeatedly asserted, the question is no longer an open one in this State, and we are relieved from the necessity of examining authorities cited by the counsel for plaintiff in error condemning what is familiarly known as the front-foot rule.

" Learned counsel for defendant concede such was the decided law of this State, and that the portion of the Kansas City charter known as the ninth article of the charter, which authorizes the cost of a pavement to be assessed against the lots now fronting on the improvement according to their respective frontage, was framed after this court had fully considered and construed

similar laws and sustained them against the charge of uncon-
stitutionality, and the assessment now challenged was made
under the construction given by this court."

Accordingly the Supreme Court of Missouri held that the
assessment in question was valid, and the tax imposed collect-
ible. And, in so far as the constitution and laws of Missouri
are concerned, this court is, of course, bound by that decision.

But that court also held, against the contention of the lot
owners, that the provisions of the Fourteenth Amendment to
the Constitution of the United States were not applicable in the
case; and our jurisdiction enables us to inquire whether the
Supreme Court of Missouri were in error in so holding.

The question thus raised has been so often and so carefully
discussed, both in the decisions of this court and of the state
courts, that we do not deem it necessary to again enter upon a
consideration of the nature and extent of the taxing power, nor
to attempt to discover and define the limitations upon that
power that may be found in constitutional principles. It will
be sufficient for our present purpose to collate our previous de-
cisions and to apply the conclusions reached therein to the pres-
ent case.

It may prevent confusion, and relieve from repetition, if we
point out that some of our cases arose under the provisions of
the Fifth and others under those of the Fourteenth Amendment
to the Constitution of the United States. While the language
of those amendments is the same, yet as they were engrafted
upon the Constitution at different times and in widely different
circumstances of our national life, it may be that questions may
arise in which different constructions and applications of their
provisions may be proper. *Slaughter House Cases*, 16 Wall. 36,
77, 80.

Thus it was said, in *Davidson v. New Orleans*, 96 U. S. 97,
103:

"It is not a little remarkable that while this provision has
been in the Constitution of the United States, as a restraint
upon the authority of the Federal government, for nearly a cen-
tury, and while, during all that time, the manner in which the
powers of that government have been exercised has been watched

with jealousy, and subjected to the most rigid criticism in all its branches, this special limitation upon its powers has rarely been invoked in the judicial forum or the more enlarged theatre of public discussion. But while it has been a part of the Constitution, as a restraint upon the power of the States, only a very few years, the docket of this court is crowded with cases in which we are asked to hold that state courts and state legislatures have deprived their own citizens of life, liberty or property without due process of law. There is here abundant evidence that there exists some strange misconception of the scope of this provision as found in the Fourteenth Amendment. In fact, it would seem, from the character of many of the cases before us, and the arguments made in them that the clause under consideration is looked upon as a means of bringing to the test of the decision of this court the abstract opinion of every unsuccessful litigant in a state court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded."

However, we shall not attempt to define what it is for a State to deprive a person of life, liberty or property without due process of law, in terms which would cover every exercise of power thus forbidden to the State, and exclude those which are not, but shall proceed, in the present case, on the assumption that the legal import of the phrase "due process of law" is the same in both Amendments. Certainly, it cannot be supposed that, by the Fourteenth Amendment, it was intended to impose on the States, when exercising their powers of taxation, any more rigid or stricter curb than that imposed on the Federal government, in a similar exercise of power, by the Fifth Amendment.

Let us, then, inquire, as briefly as possible, what has been decided by this court as to the scope and effect of the phrase "due process of law," as applied to legislative power.

One of the earliest cases, in which was examined the historical and legal meaning of those words, is *Murray's Lessee* v. *Hoboken Land Company,* 18 How. 272. The question involved was the validity of a sale of real estate made under a distress warrant, authorized by a statute of the United States, 3 Stat. 592, c. 107, against a defaulting collector of customs. It was con-

tended that such a proceeding deprived the owner of property without due process of law, contrary to the Fifth Amendment, that by "process of law" was meant a charge, defence, judgment before and by a legally constituted court. The question was thus stated by Mr. Justice Curtis:

"That the warrant now in question is legal process is not denied. It was issued in conformity with an act of Congress. But is it 'due process of law?' The Constitution contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process. It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave Congress free to make any process 'due process of law' by its mere will. To what principles, then, are we to resort to ascertain whether this process, enacted by Congress, is due process? To this the answer must be twofold. We must examine the Constitution itself, to see whether this process be in conflict with any of its provisions. If not found to be so, we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country."

Pursuing the lines of inquiry thus indicated, the court reached the conclusions that, in ascertaining and enforcing payment of taxes and of balances due from receivers of the revenue in England, the methods have varied widely from the usual course of the common law on other subjects, and that, as respects such debts, the "law of the land" authorized the employment of auditors, and an inquisition without notice, and a species of examination bearing a very close resemblance to the warrant of distress in the act of Congress in question; that this diversity in the law of the land between revenue defaulters and ordinary debtors was understood in this country, and entered into the legislation of the colonies and provinces, and more especially

of the States, after the Declaration of Independence and before the formation of the Constitution of the United States; that not only was the process of distress in nearly or quite universal use for the collection of taxes, but what was generally termed a warrant of distress, running against the body, goods and chattels of defaulting receivers of public money, was issued to some public officer, to whom was committed the power to ascertain the amount of the default, and by such warrant proceed to collect it; and that, accordingly, the distress warrant in question was not inconsistent with that part of the Constitution which prohibits a citizen from being deprived of his property without due process of law.

In *Walker* v. *Sauvinet*, 92 U. S. 90, there was presented the question whether the Fourteenth Amendment availed to secure to a citizen of Louisiana a right of trial by jury as against an act of that State which provided that, in certain circumstances, a case enforcing penalties should be tried by the judge; and it was held that " the States, so far as this amendment is concerned, are left to regulate trials in their own courts in their own way. A trial by jury in suits of common law pending in the state courts is not, therefore, a privilege or immunity of national citizenship which the States are forbidden by the Fourteenth Amendment to abridge. A State cannot deprive a person of his property without due process of law, but this does not necessarily imply that all trials in the state courts affecting the property of persons must be by jury. This requirement of the Constitution is met if the trial is had according to the settled course of judicial proceedings. *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272, 280. Due process of law is process according to the law of the land. This process in the States is regulated by the law of the State. Our power over that law is only to determine whether it is in conflict with the supreme law of the land—that is to say, with the Constitution and laws of the United States made in pursuance thereof—or with any treaty made under the authority of the United States. Here the state court has decided that the proceeding below was in accordance with the law of the State; and we do not find that to be contrary to the Constitution or any law or treaty of the United States."

*McMillen* v. *Anderson*, 95 U. S. 37, 41, was a case wherein was involved the validity of a law of the State of Louisiana, whereby a tax collector was authorized to seize property and sell it in order to enforce payment of a license tax, and which was alleged to be opposed to the provision of the Fourteenth Amendment of the Constitution which declares that no State shall deprive any person of life, liberty or property without due process of law; but it was said by this court:

" Looking at the Louisiana statute here assailed, we feel bound to say that if it is void on the ground assumed the revenue laws of nearly all the States will be found void for the same reason. The mode of assessing taxes in the States, by the Federal government, and by all governments, is necessarily summary, that it may be speedy and effectual. By summary is not meant arbitrary, or unequal, or illegal. It must, under our Constitution, be lawfully done. But that does not mean, nor does the phrase ' due process of law ' mean, by a judicial proceeding. The nation from whom we inherit the phrase ' due process of law ' has never relied upon courts of justice for the collection of her taxes, though she passed through a successful revolution in resistance to unlawful taxation. We need not here go into the literature of that constitutional provision, because in any view that can be taken of it the statute under consideration does not violate it. It enacts that, when any person shall refuse or fail to pay his license tax, the collector shall give ten days' written or printed notice to the delinquent requiring its payment, and the manner of giving this notice is fully prescribed. If at the expiration of this time the license be not fully paid, the tax collector may, without judicial formality, proceed to seize and sell, after ten days' advertisement, the property of the delinquent or so much as may be necessary to pay the tax and costs. . . . . Here is a notice that the party is assessed, by the proper officer, for a given sum as a tax of a certain kind, and ten days' time given him to pay it. Is not this a legal mode of proceeding? It seems to be supposed that it is essential to the validity of this tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed. But this is not, and never has been, considered necessary to the

validity of a tax. And the fact that most of the States now have boards of revisors of tax assessments does not prove that taxes levied without them are void."

*Davidson* v. *New Orleans*, 96 U. S. 97, was a case wherein an assessment of certain real estate in New Orleans for draining the swamps of that city was resisted in the state courts, and was by writ of error brought to this court on the ground that the proceeding deprived the owner of his property without due process of law. The origin and history of this provision of the Constitution, as found in Magna Charta, and in the Fifth and Fourteenth Amendments to the Constitution, were again considered; the cases of *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272, and *McMillen* v. *Anderson*, 95 U. S. 37, were cited and approved; and it was held that "neither the corporate agency by which the work was done, the excessive price which the statute allowed therefore, nor the relative importance of the work to the value of the land assessed, nor the fact that the assessment was made before the work was done, nor that the assessment is unequal as regards the benefits conferred, nor that personal judgments are rendered for the amount assessed, are matters in which the state authorities are controlled by the Federal Constitution."

In *Springer* v. *United States*, 102 U. S. 586, was involved the validity of an act of Congress, June 30, 1864, c. 172, 13 Stat. 218, whereby lands of A were distrained and sold by reason of his refusal to pay a tax assessed against him, and it was contended that the sale of defendant's real estate, to satisfy the tax assessed upon him, in a summary manner, without first having obtained a judgment in a court of law, was a proceeding to deprive the defendant of his property without due process of law; that by "due process of law" is meant law in its regular course of administration by the courts of justice, and not the execution of a power vested in ministerial officers. But this court, after citing *Murray's Lessee* v. *Hoboken Land Co.*, as holding that an act of Congress authorizing a warrant to issue, without oath, against a public debtor, for the seizure of his property, was valid, and that the proceeding was "due process of law," said:

"The prompt payment of taxes is always important to the

public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreasonable. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government."

In *Missouri* v. *Lewis*, 101 U. S. 22, the Fourteenth Amendment was invoked to invalidate legislation of the State of Missouri, regulating the right of appeal and of writs of error, and whereby suitors in the courts of St. Louis and certain other named counties were denied the right of appeal to the Supreme Court of Missouri in cases where it gave that right to suitors in the courts of the other counties of the State. Speaking for the court, Mr. Justice Bradley said:

" If this position is correct, the Fourteenth Amendment has a much more far-reaching effect than has been supposed. It would render invalid all limitations of jurisdiction based on the amount or character of the demand. A party having a claim for only five dollars could with equal propriety complain that he is deprived of a right enjoyed by other citizens, because he cannot prosecute it in the superior courts; and another might equally complain that he cannot bring a suit for real estate in a justice's court, where the expense is small and the proceedings are expeditious. There is no difference in principle between such discriminations as these in the jurisdiction of courts and that which the plaintiff in error complains of in the present case.

" If, however, we take into view the general objects and purposes of the Fourteenth Amendment, we shall find no reasonable ground for giving it any such application. These are to extend United States citizenship to all natives and naturalized persons, and to prohibit the States from abridging their privileges and immunities, and from depriving any person of life, liberty or property without due process of law, and from denying to any person within their jurisdiction the equal protection of the laws. It contemplates persons and classes of persons. It has not respect to local and municipal regulations that do

not injuriously affect or discriminate between persons and classes of persons within the places or municipalities for which such regulations are made. The amendment could never have been intended to prevent a State from arranging and parcelling out the jurisdiction of its several courts at its discretion. . . . Each State has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. . . . If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and in like circumstances. The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line."

In *Mattingly* v. *District of Columbia*, 97 U. S. 687, 692, there was called in question the validity of the act of Congress of June 19, 1878, 20 Stat. 166, c. 309, entitled "An act to provide for the revision and correction of assessments for special improvements in the District of Columbia and for other purposes," and it was said by this court, through Mr. Justice Strong: "It may be that the burden laid upon the property of the complainants is onerous. Special assessments for special road or street improvements very often are oppressive. But that the legislative power may authorize them, and may direct them to be made in proportion to the frontage, area or market value of the adjoining property, at its discretion, is, under the decisions, no longer an open question."

In *Kelly* v. *Pittsburgh*, 104 U. S. 78, it was urged that land which the owner had not laid off into town lots, but occupied for agricultural purposes, and through which no streets are run or used, cannot be, even by the legislature, subjected to the taxes of a city—the water tax, the gas tax, the street tax and others of similar character. The reason for this was said to be

that such taxes are for the benefit of those in a city who own property within the limits of such improvements, and who use or might use them if they choose, while he reaps no such benefit. Cases were cited from the higher courts of Kentucky and Iowa where this principle was asserted, and where those courts have held that farm lands in the city are not subject to the ordinary city taxes. But this court said:

"It is no part of our duty to inquire into the grounds on which those courts have so decided. They are questions which arise between the citizens of those States and their own city authorities, and afford no rule for construing the Constitution of the United States. . . . The main argument for the plaintiff in error—the only one to which we can listen—is that the proceeding in regard to the taxes assessed on his land deprives him of his property without due process of law.

"It is not asserted that, in the methods by which the value of his land was ascertained for the purpose of this taxation, there was any departure from the usual modes of assessment, nor that the manner of apportioning and collecting the tax was unusual or materially different from that in force in all communities where land is subject to taxation. In these respects there is no charge that the method pursued is not due process of law. Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is and always has been due process of law. The tax in question was assessed and the proper officers were proceeding to collect it in this way. The distinct ground on which this provision of the Constitution of the United States is invoked is that as the land in question is, and always has been, used as farm land, for agricultural purposes only, subjecting it to taxation for ordinary city purposes deprives the plaintiff in error of his property without due process of law. It is alleged, and probably with truth, that the estimate of the value of the land for taxation is very greatly in excess of its true value. Whether this be true or not we can-

not here inquire.    We have so often decided that we cannot re-
view and correct the errors and mistakes of the state tribunals
on that subject, that it is only necessary to refer to those de-
cisions, without a restatement of the argument on which they
rest. *State Railroad Tax Cases,* 92 U. S. 575; *Kennard* v.
*Louisiana,* 92 U. S. 480; *Davidson* v. *New Orleans,* 96 U. S.
97; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Missouri* v. *Lewis,*
101 U. S. 22; *National Bank* v. *Kimball,* 103 U. S. 732."

In *Spencer* v. *Merchant,* 125 U. S. 345, a judgment of the
Court of Appeals of the State of New York, upholding the
validity of an assessment upon lands to cover the expense of
a local improvement, was brought to this court for review
upon the allegation that the state statute was unconstitutional.
In the opinion of this court, delivered by Mr. Justice Gray,
the following extract was given from the opinion of the Court
of Appeals:

"The act of 1881 determines absolutely and conclusively
the amount of the tax to be raised, and the property to be as-
sessed and upon which it is to be apportioned.   Each of these
things was within the power of the legislature, whose action
cannot be reviewed in the courts upon the ground that it acted
unjustly or without appropriate and adequate reason.   The
legislature may commit the ascertainment of the sum to be
raised and of the benefited district to commissioners, but it is not
bound to do so, and may settle both questions for itself; and
when it does so, its action is necessarily conclusive and beyond
review.   Here an improvement has been ordered and made,
the expense of which might justly have been imposed upon ad-
jacent property benefited by the change.   By the act of 1881
the legislature imposes the unpaid portion of the cost and ex-
pense, with the interest thereon, upon that portion of the prop-
erty benefited which has thus far borne none of the burden.
In so doing, it necessarily determines two things, viz., the
amount to be realized, and the property especially benefited by
the expenditure of the amount.   The lands might have been
benefited by the improvement, and so the legislative determin-
ation that they were, and to what amount or proportion of the
cost, even if it may have been mistakingly unjust, is not open

to our review. The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its decision must of course be final. We can see in the determination reached possible sources of error and perhaps even of injustice, but we are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. The legislature practically determined that the lands described in that act were peculiarly benefited by the improvement to a certain specified amount which constituted a just proportion of the whole cost and expense; and while it may be that the process by which the result was reached was not the best attainable, and some other might have been more accurate and just, we cannot for that reason question an enactment within the general legislative power. . . . The precise wrong of which complaint is made appears to be that the land owners now assessed never had an opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation. The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confided to its jurisdiction. It may err, but courts cannot review its discretion. In this case, it kept within its power when it fixed, first, the amount to be raised to discharge the improvement debt incurred by its direction; and, second, when it designated the lots and property, which in its judgment, by reason of special benefits, should bear the burden; and having the power, we cannot criticise the reasons or manner of its action."

This definition of legislative power was approved by this court, and the judgment of the Court of Appeals was affirmed. The following extract is from the opinion of this court:

" In the absence of any more specific constitutional restric-

tion than the general prohibition against taking property without due process of law, the legislature of the State, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either, like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax, and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners. When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much. But the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited. In determining what lands are benefited by the improvement, the legislature may avail itself of such information as it deems sufficient, either through investigations by its committees, or by adopting as its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction."

In *Paulsen* v. *Portland*, 149 U. S. 30, 40, where the validity of a city ordinance, providing that the cost of a sewer should be distributed upon the property within the sewer district, and appointing viewers to estimate the proportionate share which each piece of property should bear, was questioned, because the ordinance contained no provision for notice, it was held by the Supreme Court of Oregon, and by this court on error, that notice by publication is a sufficient notice in proceedings of this nature, and that as the viewers, upon their appointment, gave notice by publication in the official paper of the city of the time

and place of their first meeting, such notice was sufficient to bring the proceedings within "due process of law."

In *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, was involved the validity of the irrigation act enacted by the legislature of the State of California. One of the objections urged against the act was that it permitted the whole cost to be levied by a board of directors of the district upon all of the real estate of the district according to value, with no reference to the degree of benefit conferred. As to this it was said by this court, through Mr. Justice Peckham :

"Assuming for the purpose of this objection that the owner of these lands had by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of opinion that the decisions of such a tribunal, in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question. It cannot be that upon a question of fact of such a nature this court has the power to review the decision of the state tribunal which has been pronounced under a statute providing for a hearing upon notice. The erroneous decision of such a question of fact violates no constitutional provision." Citing *Spencer* v. *Merchant*, 125 U. S. 345.

Another objection to the validity of the act was the total want of an opportunity to be heard on the question of the expediency of forming the district, on the questions of cost and of benefits received. In respect to this it was said :

"The provision for a hearing in the irrigation act with a condition that lands which in the judgment of the board are not benefited shall not be included, renders the determination of the board, including them after a hearing, a judgment that such lands will be benefited by the proposed plan of irrigation.

"The publication of a notice of the proposed presentation of the petition is a sufficient notification to those interested in the question and gives them an opportunity to be heard before the board. *Hager* v. *Reclamation District*, 111 U. S. 701 ; *Lent* v. *Tillson*, 140 U. S. 316 ; *Paulsen* v. *Portland*, 149 U. S. 30."

"It has been held in this court that the legislature has power

to fix such a district for itself without any hearing as to benefits, for the purpose of assessing upon the lands within the district the cost of a local, public improvement.    The legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question.    The right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax, *i. e.*, the amount of the tax which he is to pay.    *Paulsen* v. *Portland*, 149 U S. 30, 41.    But when as in this case the determination of the question of what lands shall be included in the district is only to be decided after a decision as to what lands described in the petition will be benefited, and the decision of that question is submitted to some tribunal, (the board of supervisors in this case,) the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits, and to have the lands excluded if the judgment of the board be against their being benefited.

" Unless the legislature decide the question of benefits itself, the land owner has the right to be heard upon that question before his property can be taken.    This, in substance, was determined by the decisions of this court in *Spencer* v. *Merchant*, 125 U. S. 356, and *Walston* v. *Nevin*, 128 U. S. 578."

In *Bauman* v. *Ross*, 167 U. S. 548, on appeal from the Court of Appeals of the District of Columbia, it was held that Congress may direct that, when part of a parcel of land is appropriated to the public use for a highway in the District of Columbia, the tribunal vested by law with the duty of assessing the compensation or damages due to the owner, whether for the value of the part taken, or for any injury to the rest, shall take into consideration, by way of lessening the whole or either part of the sum due him, any special and direct benefits, capable of present estimate and reasonable computation, caused by the establishment of the highway to the part not taken; that the estimate of the just compensation for property taken for the public use, under the right of eminent domain, is not required to be made by a jury, but may be entrusted to commissioners

appointed by a court, or to an inquest consisting of more or fewer men than an ordinary jury; that Congress, in the exercise of the right of taxation in the District of Columbia, may direct that half of the amount of the compensation or damages awarded to the owners of lands appropriated to the public use for a highway shall be assessed and charged upon the District of Columbia, and the other half upon the lands benefited thereby within the District, in proportion to the benefit; and may commit the ascertainment of the lands to be assessed, and the apportionment of the benefits among them, to the same tribunal which assesses the compensation or damages; that if the legislature, in taxing lands benefited by a highway, or other public improvement, makes provision for notice, by publication or otherwise, to each owner of land, and for hearing him, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law.

In the opinion of the court in that case, delivered by Mr. Justice Gray, it was said that the provisions of the statute under consideration, which regulated the assessment of damages, are to be referred, not to the right of eminent domain, but to the right of taxation, and that the legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading or the repair of a street, to be assessed upon the owners of lands benefited thereby; and that such authority has been repeatedly exercised in the District of Columbia by Congress, with the sanction of this court—citing *Willard* v. *Presbury*, 14 Wall. 676; *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Shoemaker* v. *United States*, 147 U. S. 282, 302. It was also said that the class of lands to be assessed for the purpose may be either determined by the legislature itself, by defining a territorial district, or by other designation; or it may be left by the legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited; that the rule of apportionment among the parcels of land benefited also rests within the dis-

cretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits as estimated by commissioners.

This subject has been recently considered by this court in the case of *Parsons* v. *District of Columbia*, 170 U. S. 45, and it was there held, after a review of the authorities, that the enactment by Congress that assessments levied for laying water mains in the District of Columbia should be at the rate of $1.25 per linear foot front against all lots or land abutting on the street, road or alley, in which a watermain shall be laid, was constitutional, and was conclusive alike of the necessity of the work and of its benefit as against abutting property.

We do not deem it necessary to extend this opinion by referring to the many cases in the state courts, in which the principles of the foregoing cases have been approved and applied. It will be sufficient to state the conclusions reached, after a review of the state decisions, by two text-writers of high authority for learning and accuracy:

" The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited.

" The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.

" The whole cost in other cases is levied on lands in the immediate vicinity of the work.

" In a constitutional point of view, either of these methods is admissible, and one may sometimes be just and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule." Cooley on Taxation, 447.

" The courts are very generally agreed that the authority to

require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. . . . Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency." Dillon's Municipal Corporations, vol. 2, § 752, 4th ed.

This array of authority was confronted, in the courts below, with the decision of this court in the case of *Norwood* v. *Baker*, 172 U. S. 269, which was claimed to overrule our previous cases, and to establish the principle that the cost of a local improvement cannot be assessed against abutting property according to frontage, unless the law, under which the improvement is made, provides for a preliminary hearing as to the benefits to be derived by the property to be assessed.

But we agree with the Supreme Court of Missouri in its view that such is not the necessary legal import of the decision in *Norwood* v. *Baker*. That was a case where by a village ordinance, apparently aimed at a single person, a portion of whose property was condemned for a street, the entire cost of opening the street, including not only the full amount paid for the strip condemned, but the costs and expenses of the condemnation proceedings, was thrown upon the abutting property of the person whose land was condemned. This appeared, both to the court below and to a majority of the judges of this court, to be an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power. This court, however, did not affirm the decree of the trial court awarding a perpetual injunction against the making and collection of any special assessments upon Mrs. Baker's property, but said:

"It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular

assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of the opening of the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property. By the decree rendered the court avoided the performance of functions appertaining to an assessing tribunal or body, and left the subject under the control of the local authorities designated by the State."

That this decision did not go to the extent claimed by the plaintiff in error in this case is evident, because in the opinion of the majority it is expressly said that the decision was not inconsistent with our decisions in *Parsons* v. *District of Columbia*, 170 U. S. 45, 56, and in *Spencer* v. *Merchant*, 125 U. S. 345, 357.

It may be conceded that courts of equity are always open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty or property, without due process of law. And such, in the opinion of a majority of the judges of this court, was the nature and effect of the proceedings in the case of *Norwood* v. *Baker.*

But there is no such a state of facts in the present case. Those facts are thus stated by the court of Missouri :

" The work done consisted of paving with asphaltum the roadway of Forest avenue in Kansas City, thirty-six feet in width, from Independence avenue to Twelfth street, a distance of one half a mile. Forest avenue is one of the oldest and best improved residence streets in the city, and all of the lots abutting thereon front the street and extend back therefrom uniformly to the depth of an ordinary city lot to an alley. The lots are all improved and used for residence purposes, and all of the lots are substantially on the grade of the street as improved, and are similarly situated with respect to the asphalt pavement. The structure of the pavement along its entire extent is uniform in distance and quality. There is no showing that there is any difference in the value of any of the lots abutting on the improvement."

What was complained of was an orderly procedure under a scheme of local improvements prescribed by the legislature and approved by the courts of the State as consistent with constitutional principles.

The judgment of the Supreme Court of Missouri is

*Affirmed.*

Mr. Justice Harlan, (with whom concurred Mr. Justice White and Mr. Justice McKenna,) dissenting.

The special tax bills here in question purport to cover the cost of paving with asphalt a part of Forest avenue in Kansas City, Missouri. The work was done under the orders of the common council of that city, and the tax bills, it is alleged, were made out in conformity with the provisions of the city charter.

By section two of article nine of the city charter it was provided that "the city shall have power to cause to be graded, regraded, constructed, reconstructed, paved, repaved, blocked, reblocked, graveled, regraveled, macadamized, remacadamized, curbed, recurbed, guttered, reguttered, or otherwise improved or repaired, all streets, alleys, sidewalks, avenues, public highways and parts thereof, . . . and to pay therefor out of the general fund *or by issuing special tax bills* as herein mentioned. . . ."

The same section provides that no resolution for the paving, repaving, etc., of any street, alley, avenue, public highway or part thereof "shall be passed by the common council except upon recommendation of the board of public works indorsed thereon; and provided further, that if the resident owners of the city who own a majority in front feet of all the lands belonging to such residents and fronting on the street, alley, avenue, public highway or part thereof to be improved shall, within thirty days after the first day of the publication of such resolution, file with the board of public works a petition, signed by them, to have such street, alley, avenue, public highway or part thereof paved, repaved, blocked, reblocked, graveled, regraveled, macadamized or remacadamized with a different kind of material or in a different manner from that specified in such resolution,

then the ordinance providing for the doing of such work or making such improvement shall provide that the work shall be done in the manner and with the material specified in such petition, and in such case the ordinance need not be recommended by the board of public works as aforesaid. If the remonstrance of the resident property owners above mentioned shall be filed with the city clerk, as herein provided, then the power of the common council to make the proposed improvement and pay therefor in special tax bills shall cease until a sufficient number of persons so remonstrating or their grantees shall, in writing, withdraw their names, or the property represented by them, from such remonstrance, so that said remonstrance shall cease to represent a majority of the resident property owners, as above provided, when the common council shall proceed in the manner above mentioned to cause the proposed improvement to be made." But by a subsequent section it was provided : " When it shall be proposed to pave, repave, block, reblock, gravel, regravel, macadamize or remacadamize any street, alley, avenue, public highway or part thereof *and pay therefor in special tax bills*, if the common council shall, by ordinance, find and declare that the resolution provided in section two of this article has been published as therein required and that the resident owners of the city who own a majority in front feet of all the lands belonging to such residents fronting on the street, alley, avenue, public highway or part thereof to be improved have not filed with the city clerk a remonstrance against the doing of such work or a petition for the making of such improvement with a different kind of material or in a different manner from that specified in such resolution, or that such petition was filed for the doing of the work as mentioned in said ordinance, such finding and declaration shall be conclusive for all purposes, and *no special tax bill* shall be held *invalid or affected* for the reason *that such resolution was not published as therein required,* or *that a remonstrance or petition sufficiently signed was filed as therein required,* or *that such petition was not filed or was insufficiently signed."* § 4.

By section three it was provided that "all ordinances and contracts for all work authorized to be done by section two of

this article shall specify how the same is to be paid for, and in case payment is to be made in special tax bills, the city shall in no event nor in any manner whatever be liable for or on account of the work."

The cost of work done on sidewalks, streets, avenues, alleys and public highways is provided for in the fifth and sixth sections of the same article, as follows: " The cost of all work on any sidewalk, including curbing and guttering along the side thereof, exclusive of the grading of the same, shall be charged as a special tax upon the adjoining lands according to the frontage thereof on the sidewalk.   The cost of all other work specified in the first three sections of this article on all streets, avenues, alleys and public highways, or parts thereof, *shall* be charged as a *special tax* on the land *on both sides of and adjoining* the street, avenue, alley or public highway, or parts thereof improved, according to the *frontage* thereof.  . . .   When any work other than grading or regrading, as last aforesaid, shall be completed, and is to be paid for in special tax bills, the board of public works shall cause the city engineer to compute the cost thereof, and apportion the same among the several lots or parcels of land to be charged therewith, and charge each lot or parcel of land with its proper share of such cost according to the *frontage* of such land.   The board of public works shall, after the cost of any work has been so apportioned for payment in special tax bills, except as hereinafter provided, make out and certify, in favor of the contractor or contractors to be paid, a special tax bill for the amount of the special tax, according to such apportionment, against each lot or parcel of land to be charged."

By section eighteen of the same article every *special tax bill* issued under its provisions is made " a *lien* upon the land described therein, upon the date of the receipt to the board of public works therefor, and such lien shall continue for two years thereafter."

It thus appears that under the charter of Kansas City the cost of the paving or the repaving of any street, avenue, alley or public highway, is put upon the abutting property under a *rule* absolutely excluding any consideration whatever of the

question of special benefits accruing, by reason of the work done, to such property.   It is true the abutting owner, in defence of a suit brought on a special tax bill, may show any mistake or error in the amount of such bill, or that the work was not done in a workmanlike manner ; but the cost, set forth in the tax bill, or when ascertained in a suit on the tax bill, *must* be borne by the abutting property, according to its *frontage,* even if such cost be in substantial excess of the special benefits, if any, accruing to the property assessed.   So the abutting property *must* bear the cost, according to frontage, even *if such cost equals the full or actual market value of the land.*   Thus, the entire property abutting on the street improved, and subjected by the statute, that is, by the city charter, to a lien in favor of the contractor or his assignee, may be taken from the owner, for the benefit of the general public, to meet the cost of improving a public highway in which the entire community is interested.   But that circumstance, it is contended, is not of the slightest consequence ; for—so the argument in support of the statute runs—the legislature having determined that the land abutting on a public street shall, according to its frontage, meet the cost, whatever it may be, of improving that street, the courts cannot inquire whether the owner has received any such special benefit as justifies the putting upon him of a special burden not shared by the general public for whose use the improvement was made, nor inquire whether the cost of the work equals or exceeds the value of the property.   I cannot assent to this principle.   It recognizes, contrary to the principles announced in *Norwood* v. *Baker,* 172 U. S. 269, 277, 279, 293, 297, the existence in the legislative branch of government of powers which, I take leave to say, cannot be exercised without violating the Constitution of the United States.   In that case, upon the fullest consideration, it was held, as had been held in previous cases, that the due process of law prescribed by the Fourteenth Amendment requires compensation to be made or secured to the owner when private property is taken by a State or under its authority for public use.   We also held that an assessment upon abutting property for the cost and expense incurred in opening a street was to be referred to the power of taxation, and that the

Constitution of the United States forbade an exercise of that power that would put upon private property the cost of a public work in substantial excess of the special benefits accruing to it from such work. Let us see if that was not the decision of the court.

In that case the attempt was made to put upon the abutting property the entire cost incurred in opening a public street through the owner's lands. No inquiry as to special benefits was made; indeed, no inquiry of that character was permissible under the ordinance in virtue of which the street was opened. It was not denied that the ordinance was consistent with the statutes of the State; and the question was distinctly presented whether a special assessment for the cost of opening a street through private property could be sustained under the Constitution of the United States if it was made under a *rule* excluding all inquiry as to special benefits accruing to the abutting property by reason of such improvement. In that case it was the public and not the owner of the property that wished the street to be opened. The judgment of the Circuit Court enjoining the assessment was affirmed upon the ground—so our mandate expressly stated—that the assessment was " under a *rule* which *excluded* any inquiry as to special benefits, and the necessary operation of which was, *to the extent of the excess of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom*, to take private property for public use without compensation." The mandate was in harmony with the opinion, for the court said : " It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property."

Justices Harlan, White and McKenna, dissenting.

As the court in the present case makes some observations as to the scope of the decision in *Norwood* v. *Baker*, it will be well to ascertain the precise grounds upon which our judgment in that case was based. Those grounds are indicated by the following extracts from the opinion:

" Undoubtedly abutting owners may be subjected to *special assessments to meet the expenses of opening public highways in front of their property*—such assessments, according to well-established principles, resting upon the ground *that special burdens may be imposed for special or peculiar benefits accruing from public improvements.* *Mobile County* v. *Kimball,* 102 U. S. 691, 703, 704 ; *Illinois Central Railroad* v. *Decatur,* 147 U. S. 190, 202 ; *Bauman* v. *Ross,* 167 U. S. 548, 589, and authorities there cited. And according to the weight of judicial authority, the legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement, and which may be subjected to special assessment to meet the cost of such improvement. In *Williams* v. *Eggleston,* 170 U. S. 304, 311, where the only question, as this court stated, was as to the power of the legislature to cast the burden of a public improvement upon certain towns *which had been judicially determined to be towns benefited by such improvement,* it was said : ' Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking *generally,* may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement.' But the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired, if it were established as a rule of constitutional law, that the imposition by the legislature upon partic-

ular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country."

Again : "It is one thing for the legislature to prescribe as a *general* rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received. In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess*, a taking, under the guise of taxation, of private property for public use without compensation.. We say ' substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment." Further, in the same case : "The decree does not prevent the village, if it has or obtains power to that end, from proceeding to make an assessment in conformity with the view indicated in this opinion, namely : That while abutting property may be specially assessed on account of the expense attending the opening of a public street in front of it, such assessment must be measured or limited by the special benefits accruing to it, that is, by benefits that are not shared by the general public ; and that taxation of the abutting property for any substantial excess of such cost over special benefits will, to the extent of such excess, be a taking of private property for public use without compensation.".

Does the court intend in this case to overrule the principles

announced in *Norwood* v. *Baker?* Does it intend to reject as unsound the doctrine that "the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement?" Is it the purpose of the court, in this case, to overrule the doctrine that taxation of abutting property to meet the cost of a public improvement—such taxation being for an amount in substantial excess of the special benefits received—"will, *to the extent of such excess*, be a taking of private property for public use without compensation?" The opinion of the majority is so worded that I am not able to answer these questions with absolute confidence. It is difficult to tell just how far the court intends to go. But I am quite sure, from the intimations contained in the opinion, that it will be cited by some as resting upon the broad ground that a legislative determination as to the extent to which land abutting on a public street may be specially assessed for the cost of paving such street is conclusive upon the owner, and that he will not be heard, in a judicial tribunal or elsewhere, to complain even if, under the rule prescribed, the cost is in substantial excess of any special benefits accruing to his property, or even if such cost equals or exceeds the value of the property specially taxed. The reasons which, in my judgment, condemn such a doctrine as inconsistent with the Constitution are set forth in *Norwood* v. *Baker,* and need not be repeated. But I may add a reference to some recent adjudications.

In *Sears* v. *Boston*, 173 Mass. 71, 78, which was the case of a special assessment to meet the cost of watering streets, the court said: "It is now established by the highest judicial authority that such assessments cannot be so laid upon any estate as to be in substantial excess of the benefit received. The case of *Norwood* v. *Baker*, 172 U. S. 269, contains an elaborate discussion of the subject, with a citation of authorities from many of the States, and holds that a local assessment for an amount in substantial excess of the benefit received is in violation of the Fourteenth Amendment of the Constitution of the United

States, inasmuch as it would deprive one of his property without compensation, and so without due process of law. The authority of this case is controlling in all state courts, and if it were not, *it is in accordance with sound principle*, and with the great weight of authority in other courts. The principles which have often been stated by this court lead to the same result. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, 101, and cases cited." In *Sears* v. *Street Commissioners*, 173 Mass. 350, 352, which was the case of charges upon land to meet the cost of certain sewerage work done under municipal authority, Mr. Justice Knowlton, delivering the unanimous judgment of the court, said : "If we treat the determination of these charges as a local and special assessment upon particular estates, we have to consider the principles on which such taxation is founded. It is well established that taxation of this kind is permissible under the constitution of this Commonwealth and under the Constitution of the United States *only* when founded upon special and peculiar benefits to the property from the expenditure on account of which the tax is laid, and then *only to an amount not exceeding such special and peculiar benefits. . . .* The fact that the charges to be determined are for the construction, maintenance and operation of the sewerage works of the whole city, gives some force to the possibility of a construction which includes all benefits ; but whether this construction should be adopted or not, the charges may be determined on any grounds which the street commissioners deem just and proper, and may not be founded in any great degree, if at all, upon special and peculiar benefits, and may in any particular case largely exceed the benefits. This fact in itself is enough to bring the statute within the prohibition of the Constitution, inasmuch as it purports to authorize a taking of property to pay a charge which is not founded on a special benefit or equivalent received by the estate or its owner. Such a taking would be without due process of law"—citing *Norwood* v. *Baker*, 172 U. S. 269 ; *New Brunswick Rubber Co.* v. *Street Com'rs*, 9 Vroom, 190 ; *Barnes* v. *Dyer*, 56 Vermont, 469, and *Thomas* v. *Gain*, 35 Mich. 155. In *Dexter* v. *Boston*, 176 Mass. 247, 251, 252, the court said : "It is now settled law in this court, as it is in the

Supreme Court of the United States, and in many other courts, that after the construction of a public improvement a local assessment for the cost of it cannot be laid upon real estate in substantial excess of the benefit received by the property. Such assessments must be founded on the benefits, and be proportioned to the benefits." To the same effect are *Hutchison* v. *Storrie*, 92 Texas, 688; *Adams* v. *City*, (Ind.) 57 N. E. Rep. 114; *McKee* v. *Town of Pendleton*, (Ind.) 57 N. E. Rep. 532; *Fay* v. *City of Springfield*, 94 Fed. Rep. 409; *Loeb* v. *Trustees*, 91 Fed. Rep. 37; *Charles* v. *Marion City*, 98 Fed. Rep. 166; *Cowley* v. *Spokane*, 99 Fed. Rep. 840.

The court, after referring to the declaration of the Supreme Court of Missouri to the effect that the Fourteenth Amendment was not applicable to this case, proceeds, in order to "prevent confusion and relieve from repetition," to refer to some of the cases arising under that and the Fifth Amendment. In the same connection the court, referring to the Fifth and Fourteenth Amendments, says that "while the language of those Amendments is the same [in respect of the deprivation of property without due process of law], yet as they were engrafted upon the Constitution at different times and in widely different circumstances of our national life, it may be that questions may arise in which different constructions and applications of their provisions may be proper." As the court expressly declines to formulate any rule to determine for all cases "what it is for a State to deprive a person of life, liberty or property without due process of law," I will not enter upon a discussion of that question, but content myself with saying that the prohibition against the deprivation of property without due process of law cannot mean one thing under the Fifth Amendment and another thing under the Fourteenth Amendment, the words used being the same in each Amendment. If the court intends to intimate the contrary in its opinion, I submit that the intimation is not sustained by any former decision, and is not justified by sound principle.

The first case to which the court refers as arising under the Fourteenth Amendment is *Davidson* v. *New Orleans*, 96 U. S. 97, 103–105. From that case sentences are quoted which were

intended to remove the impression, then supposed to exist with some, that under that Amendment it was possible to bring "to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a state court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded." But the court in the present case overlooks another part of the opinion in *Davidson* v. *New Orleans* which was pertinent to the issue in that case, and is pertinent to the present discussion. After speaking of the difficulty of an attempt to lay down any rule to determine the full scope of the Fourteenth Amendment, and suggesting that the wise course was to proceed by the gradual process of judicial inclusion and exclusion, the court said : "As contributing, to some extent, to this mode of determining what class of cases do not fall within its provision, we lay down the following proposition, as applicable to the case before us: That whenever by the laws of a State, or by state authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." Here is a direct affirmation of the doctrine that a tax, assessment, servitude or other burden may be imposed by a State, or under its authority, consistently with the due process of law prescribed by the Fourteenth Amendment, *if* the person owning the property upon which such tax, assessment, servitude or burden is imposed is given an opportunity, in some appropriate way, to contest the matter. In the present case, no such opportunity was given to the plaintiffs in error, and the state court held that they had no right to show, in any tribunal, that their property was being taken for the cost of improving a public street in substantial excess of any special

benefits accruing to them beyond those accruing to the general public owning and using the street so improved.

Reference is made by the court to *McMillen* v. *Anderson*, 95 U. S. 38, 41, 42, in which will be found certain observations as to the words "due process of law." In that case the only question was whether a statute of Louisiana imposing a license tax, which did not give a person an opportunity to be present when the tax was assessed against him, or provide for its collection by suit, was in violation of the Fourteenth Amendment. The court, after referring to the provision requiring, in case the license tax was not paid, that the collector should give ten days' written or printed notice to the delinquent, and if at the expiration of that time the license was not fully paid, the tax collector might, without judicial formality, proceed to seize and sell, after ten days' advertisement, the property of the delin-quent, or so much as might be necessary to pay the taxes and costs, said: "Another statute declares who is liable to this tax, and fixes the amount of it. The statute here complained of relates only to the manner of its collection. Here is a notice that the party is assessed, by the proper officer, for a given sum, as a tax of a certain kind, and ten days' time given him to pay it. Is not this a legal mode of proceeding? It seems to be supposed that it is essential to the validity of this tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed. But this is not, and never has been, considered necessary to the validity of a tax. And the fact that most of the States now have boards of revisers of tax assessments does not prove that taxes levied without them are void. Nor is the person charged with such a tax without legal remedy by the laws of Louisiana. It is probable that in that State, as in others, if compelled to pay the tax by a levy upon his property, he can sue the proper party and recover back the money as paid under duress, if the tax was illegal. But however that may be, it is quite certain that he can, if he is wrongfully taxed, *stay the proceedings for its collection by process of injunction.* See Fouqua's Code of Practice of Louisiana, Arts. 296–309, inclusive. *The act of 1874 recognizes this right to an injunction, and regulates the proceed-*

*ings when issued to stay the collection of taxes.* It declares that they shall be treated by the courts as preferred cases, and imposes a double tax upon a dissolution of the injunction." Here we have, contrary to the intimation given in the opinion of the court in this case, a recognition of the principle that the Fourteenth Amendment does apply to cases of taxation under the laws of a State. And it is to be observed that the court in *McMillen* v. *Anderson* takes care to show that, under the laws of Louisiana, the taxpayer was given an opportunity to be heard in respect of the validity of the tax imposed upon him.

Among the cases cited in support of the conclusions announced by the majority are *Mattingly* v. *District of Columbia,* 97 U. S. 687, 692; *Kelly* v. *Pittsburgh,* 104 U. S. 78; *Spencer* v. *Merchant,* 125 U. S. 345; *Paulsen* v. *Portland,* 149 U. S. 30, 40; *Bauman* v. *Ross,* 167 U. S. 548, and *Parsons* v. *District of Columbia,* 170 U. S. 45.

It seems to me quite clear that the particular question before us was not involved or determined in any of those cases.

In *Mattingly* v. *District of Columbia,* it was said that the legislature may direct special assessments for special road or street improvements " to be made in proportion to the frontage, area or market value of the adjoining property, at its discretion." But that falls far short of deciding that an assessment in proportion to frontage could be sustained if it exceeded the value of the property or was for an amount in excess of the special benefits accruing to the property assessed. Besides, no question was made in that case as to the cost of the work exceeding special benefits.

In *Kelly* v. *Pittsburgh,* the only point involved or adjudged was that the Fourteenth Amendment did not stand in the way of the legislature of a State extending the limits of a city or township so as to include lands fit for agricultural use only, and make them subject to taxation for the local purposes of the extended city or town, although the owners did not enjoy the advantages of the municipal government to the same extent as those who resided in the thickly settled parts of the city or town. It was not a case in which the property of particular persons was specially assessed by a rule not applicable to all

other assessments. On the contrary it was admitted in that case that the methods adopted to ascertain the value for purposes of local taxation of the lands there in question were such as were usually employed, and that the manner of apportioning and collecting the tax was not unusual or materially different from that in force in all communities where land was subject to taxation. It was held that it was not the function of the court to correct mere errors in the valuation of lands for purposes of taxation.

In *Spencer* v. *Merchant* no question arose as to an excess of the cost of the improvement there in question over special benefits. The question before the court was as to the constitutionality of a statute validating what had been judicially determined to be a void assessment. This court so declared when it said that the plaintiff, who questioned the validity of the statute, contended " that the statute of 1881 was unconstitutional and void, because it was an attempt by the legislature to validate a void assessment, without giving the owners of the lands assessed an opportunity to be heard upon *the whole amount of the assessment.*" The court held that the statute itself was, under the circumstances of that case, all the notice and hearing the owners of the lands required. There was no occasion for any general declaration as to the powers of the legislature which would cover cases of void assessments validated by legislative enactment where the amount assessed upon particular property was in substantial excess of special benefits accruing to it. Referring to *Spencer* v. *Merchant,* this court said in *Norwood* v. *Baker :* " The point raised in that case—*the only point in judgment*—was one relating to proper notice to the owners of the property assessed, in order that they might be heard upon the question of the equitable apportionment of the sum directed to be levied upon all of them. This appears from both the opinion and the dissenting opinion in that case."

In *Paulsen* v. *Portland* the only point adjudged was that notice by publication in a newspaper of the time and place of the meeting of viewers appointed to estimate the proportionate share which each piece should bear of the amount to be assessed upon the property in a sewer district for the cost of a

sewer, was sufficient "to bring the proceedings within due process of law." The court in that case took care to say that it did not question the proposition that "notice to the taxpayer in some form must be given before an assessment for the construction of a sewer can be sustained, as in any other demand upon the individual for a portion of his property." That case cannot be held to support the views of the Supreme Court of Missouri, for that court in this case held in substance that, under legislative authority, property fronting on a public street could all be taken to pay the cost of improving the street, leaving nothing whatever to the owner, and that too without any notice and without any right in the owner, in any form, to show that the amount required to be paid exceeded not only any special benefits accruing to the property but even the value of the property assessed.

In *Bauman* v. *Ross* we had a case in which a special assessment was made, under an act of Congress, imposing upon the lands benefited one half of the amount awarded by the court as damages for each highway or reservation, or part thereof, condemned and established under the act. The assessment was directed to be "charged upon the lands benefited by the laying out and opening of such highway or reservation or part thereof," and the jury was directed "to ascertain and determine what property is thereby benefited." The same act directed the jury to assess against each parcel which it found to be so benefited its proportional part of the sum assessed, provided that as to any tract, part of which only had been taken, due allowance should be made for the amount, if any, "which shall have been deducted from the value of the part taken on account of the benefit to the remainder of the tract." In such a case, the owner of the property being given full right to be heard before an authorized tribunal upon the question of special benefits, no question could arise such as is presented in the present one.

In *Parsons* v. *District of Columbia* the question was as to the validity of an act of Congress which provided for establishing, in this District, "a comprehensive system, regulating the supply of water and the erection and maintenance of reservoirs and water mains." It was provided that assessments

levied for water mains should be at the rate of $1.25 per linear foot against all lots or land abutting upon the street, road or alley in which a water main is laid.   This court, among other things, said : " Another complaint urged is that the assessment exceeded the actual cost of the work, and this is supposed to be shown by the fact that the expense of putting down this particular main was less than the amount raised by the assessment.   But this objection overlooks the fact that the laying of this main was part of the *water system*, and that the assessment prescribed was not merely to put down the pipes, but to raise a fund to keep the system in efficient repair.   The moneys raised beyond the expense of laying the pipes are not paid into the general treasury of the District, but are set aside *to maintain and repair the system.*"   But the court took care to add, " and there is no such disproportion between the amount assessed and the actual cost as to show any abuse of legislative power."   The words thus added are significant, and if they had not been added the opinion would not have passed without dissent. The words referred to justify the conclusion that if there had been an abuse of legislative power ; if the amount assessed had been substantially or materially in excess of the cost of the work or of the value of the property assessed, or of the special benefits received, the owners of the abutting property might justly have complained of a violation of their constitutional rights.

The court, in its opinion, quotes certain passages from Cooley's Treatise on Taxation, in which the author refers to the different modes in which the cost of local public work may be met, namely : (1) a general tax to cover the major part of the cost, the smaller portion to be levied upon the estates specially benefited ; (2) a tax on the land specially benefited to meet the major part of the cost, the smaller part to be paid by the general public ; and (3) a tax for the whole cost on the lands in the immediate vicinity of the work.   In respect of each of these methods the court cites these words of Cooley : " In a constitutional point of view, either of these methods is admissible, and one may sometimes be just and another at other times.   In other cases it may be deemed reasonable to make the whole cost a geberal

charge, and levy no special assessment whatever. The question is legislative, and like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal, than it would be were the legislature required to levy it by one inflexible and arbitrary rule." Cooley on Taxation, 447, c. 20, § 5; Cooley on Taxation, 2d ed. 637, § 5.

But in the *same chapter* from which the above extract was made the author discusses fully the underlying principles of special assessments, saying: " Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community *is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure* of public funds; and, in addition to the general levy, they demand that special contributions, *in consideration of the special benefit,* shall be made by the person receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby, their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies." Cooley on Taxation, 416, c. 20, § 1; Cooley on Taxation, 2d ed. 606, § 1. To this we may add the declaration of the author when, speaking for the Supreme Court of Michigan in *Thomas* v. *Gain,* 35 Mich. 155, 162, he said: " It is generally agreed that an assessment levied *without regard to actual or probable benefits* is *unlawful as constituting an attempt to appropriate private property to public use.*"

The court overruled other passages in the same chapter of

Cooley's Treatise on Taxation.   Referring to the rule of assessment by the front foot upon property abutting on a local improvement, where no taxing district has been established over which the cost could be distributed by some standard of benefit, actual or presumptive, Cooley says : " But it has been denied, on what seems the most conclusive grounds, that this is permissible.   It is not legitimate taxation because it is lacking in one of its indispensable elements.   It considers each lot by itself, compelling each to bear the burden of the improvement in front of it, without reference to any contribution to be made to the improvement by any other property, and it is consequently without any apportionment.   From accidental circumstances, the major part of the cost of an important public work may be expended in front of a single lot; those circumstances not at all contributing to make the improvement more valuable to the lot thus specially burdened, perhaps even having the opposite consequence.   But whatever might be the result in particular cases, the fatal vice in the system is that it provides no taxing districts whatever. It is as arbitrary in principle, and would sometimes be as unequal in operation, as a regulation that a town from which a state officer chanced to be chosen should pay his salary, or that that locality in which the standing army, or any portion of it, should be stationed for the time being should be charged with its support.   If one is legitimate taxation the other would be. In sidewalk cases a regulation of the kind has been held admissible, but it has been justified as a regulation of police, and is not supported on the taxing power exclusively.   As has been well said, to compel individuals to contribute money or property to the use of the public, without reference to any common ratio, and without requiring the sum paid by one piece or kind of property, or by one person, to bear any relation whatever to that paid by another, is to lay a forced contribution, not a tax, within the sense of those terms as applied to the exercise of powers by any enlightened or responsible government."   Cooley on Taxation, 453 c. 20, § 53 ; Cooley on Taxation, 2d ed. 646, 647.

The author also says what I do not find in the opinion of the court in this case: " There can be no justification for any proceeding which charges the land *with an assessment greater than*

*the benefit ; it is a plain case of appropriating private property to public use without compensation."*   Cooley on Taxation, 2d ed. 661.

The court also cites from Dillon's Treatise on Municipal Corporations certain passages to the effect that whether the expense of making local improvements " shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited, and if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abuttees, according to frontage or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency." 2 Dillon, Mun. Corp. 4th ed. p. 912, § 752.   These views need not be controverted in this case, and of their soundness I have no doubt when we are ascertaining the general rule to be applied in the particular classes of cases referred to by the author. But the above quotation from Dillon by no means indicates his opinion as to the application of the general rule announced by him.   In the same chapter from which the court quotes, I find the following principles announced by the author as deduced from an extended reference to numerous adjudged cases : " Special benefits to the property assessed, that is, benefits received by it *in addition to those received by the community at large,* is the true *and only just foundation upon which local assessments can rest ;* and *to the extent of special benefits* it is everywhere admitted that the legislature may authorize local taxes or assessments to be made."   Again : " When not restrained by the constitution of the particular State, the legislature has a discretion, commensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited and how the benefits shall be apportioned. This proposition, as stated, is nowhere denied ; but the adjudged cases do not agree upon the extent of legislative power.   The courts which have followed the doctrine of the leading case in New York, *People* v. *Brooklyn,* 4 N. Y. 419, have asserted that the authority of the legislature in this regard is quite without limits ; but the decided tendency of the later decisions, including those of the courts of New Jersey, Michigan and Pennsylvania,

is to hold that the legislative power is not unlimited, and that these assessments must be apportioned by some rule capable of producing reasonable equality, and that provisions of such a nature as to make it legally impossible that the burden can be apportioned with proximate equality are arbitrary exactions and not an exercise of legislative authority." 2 Dillon, Mun. Corp. 4th ed. p. 934, § 761. Further, the author says : " Whether it is competent for the legislature to declare that no part of the expense of a local improvement of a public nature shall be borne by a general tax, and that the whole of it shall be assessed upon the abutting property and other property in the vicinity of the improvements, thus for itself conclusively determining, not only that such property is specially benefited, but that it *is* thus benefited to the extent of the cost of the improvement, and then to provide for the apportionment of the amount by an estimate to be made by designated boards or officers, or by frontage or superficial area, is a question upon which the courts are not agreed. Almost all of the earlier cases asserted that the legislative discretion in the apportionment of public burdens extended this far, and such legislation is still upheld in most of the States. But since the period when express provisions have been made in many of the state constitutions requiring uniformity and equality of taxation, several courts of great respectability, either by force of this requirement or in the spirit of it, and perceiving that *special benefits actually received* by each parcel of contributing property, *was the only principle upon which such assessments can justly rest,* and that *any other rule is unequal, oppressive and arbitrary,* have denied the unlimited scope of legislative discretion and power, and asserted what must *upon principle be regarded as the just* and *reasonable doctrine,* that the cost of a local improvement can be assessed upon particular property *only to the extent that it is specially and peculiarly benefited ; and since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury.*" 2 Dillon, Mun. Corp. 4th ed. p. 935, § 761.

I agree with the court in saying that Cooley and Dillon are text-writers of high authority for learning and accuracy. But I cannot agree that the extracts from their treatises found in

its opinion correctly or fully state their views upon the particular question now before us.

The declaration by the court that the decision in *Norwood* v. *Baker* was placed upon the ground that the burdens imposed upon Mrs. Baker's property amounted to *confiscation* is, I submit, an inadequate view of our decision. The word "confiscation" is not to be found in the opinion in that case. The affirmance of the judgment in that case was upon the sole ground that the assessment was made under a *rule* that absolutely *excluded* any *inquiry as to special benefits*. Such a rule was held to be void because it rested upon the theory that to meet the cost of opening a street private property could be specially assessed for an amount in substantial excess of special benefits accruing to it from the improvement made in the interest of the general public.

If it may be inferred from what is said in the opinion of the court in this case that a special assessment resulting in the *confiscation* of the entire property assessed might not be sustained, I have to say that manifestly confiscation does occur when the property specially assessed is all taken to meet the cost of a public improvement supposed to be specially beneficial to the owner. So if the property is assessed beyond the special benefits accruing, there is confiscation *to the extent of such excess*. But if confiscation, in any form, will not be tolerated, what becomes of the broad declarations in the opinions in some of the cited cases to the effect that the legislature may prescribe the extent to which private property is specifically benefited by a local public improvement, and that its action in that respect cannot be questioned by the owner of the property assessed even if it appeared that the amount assessed exceeded the special benefits, or even if it appeared that the cost of the improvement exceeded the value of the property assessed? Are we to understand from the interpretation now placed upon the decision in *Norwood* v. *Baker* that the courts may, for the protection of the property owner, interfere when a legislative determination amounts to confiscation, pure and simple, but that they cannot interfere when the amount assessed is in substantial excess of the benefits received?

In my judgment, some of the cases referred to in the opinion of the court contain general declarations as to the powers of the legislature in the matter of special assessments which went far beyond what was necessary to be said in order to dispose of the respective cases. Those declarations, literally interpreted, seem to recognize the legislature in this country as possessing absolute, arbitrary power in the matter of special assessments imposed to meet the cost of a public improvement —indeed, all the power, in the matter of taxation, that belongs to the Parliament of Great Britain. The opinions in some of these cases recall the wise observations of Chief Justice Marshall, when, speaking for this court, he said: "It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason for the maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case to be decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens* v. *Virginia,* 6 Wheat. 264, 399. We live under a Constitution which is the supreme law of the land. It enumerates the powers of government, and prescribes limitations and restrictions upon legislative authority as to the property of citizens. Some of these limitations and restrictions apply equally to the Congress of the United States and to the legislatures of the States. If it be true that the only ground upon which a special assessment can be legally imposed upon particular private property to meet the cost of a public improvement is that such property receives, or may reasonably be held to receive, special benefits not shared by the general public— and no one, I take it, will dispute the soundness of that principle—and if it be true that the property cannot be made to bear a proportion of such costs in substantial excess of special benefits, it necessarily follows that the owner of the property is entitled to protection against any legislative rule or requirement

that puts upon his property a burden greater than can be lawfully imposed upon it. How can he obtain such protection except through the courts? To say that he cannot do so is to say that the legislature possesses an absolute unlimited power over rights of property which is inconsistent with the supreme law of the land. Is it to become a canon of constitutional construction that the courts may interfere when the legislature authorizes a special assessment that will amount to the confiscation of the entire property assessed, but will not interfere when the confiscation is only to a limited, although a material, extent? In other words, is there to be a difference, so far as the powers of the courts are concerned, between confiscation, under the guise of taxation, of the entire property of the citizen and confiscation of only a part of it?

I have spoken of special assessments where the amount assessed was in substantial excess of special benefits. The words "substantial excess" have been used because, in the language of this court in *Norwood* v. *Baker*, already cited, exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a substantial character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment. I do not doubt—indeed, the opinion in *Norwood* v. *Baker* concedes—that the legislature has a wide discretion in cases of special assessments to meet the cost of improving or opening public highways. But I deny that the owner of abutting property can be precluded from showing that the amount assessed upon him is in substantial excess of special benefits accruing to his property. To the extent of such excess the burden should be borne by the community for whose benefit the improvement is made. I entirely concur in the views of Church, C. J., as expressed in *Guest* v. *Brooklyn*, 69 N. Y. 506. He said: "The right to make a public street is based upon public necessity, and the public should pay for it. To force an expensive improvement [against the consent of the owners, or a majority of them] upon a few property owners against their consent, and compel them to pay the entire expense, under the delusive pretense of a corresponding specific benefit conferred upon their property,

is a species of despotism that ought not to be perpetuated under a government which claims to protect property equally with life and liberty. Besides its manifest injustice, it deprives the citizen practically of the principal protection [aside from constitutional restraints] against unjust taxation, viz., the responsibility of the representative for his acts to his constituents. As respects general taxation where all are equally affected, this operates, but it has no beneficial application in preventing local taxation for public improvements. The majority are never backward in consenting to, or even demanding, improvements which they may enjoy without expense to themselves." 2 Dillon's Mun. Corp. 934, 4th ed. note 1.

At the same time this case was determined the court announced its judgment in *Wight* v. *Davidson*, on appeal from the Court of Appeals of the District of Columbia. In its opinion in that case it makes some reference to *Norwood* v. *Baker* to which it is appropriate to refer in this opinion. The court, in *Wight* v. *Davidson*, says: "There [in *Norwood* v. *Baker*,] the question was as to the validity of a village ordinance, which imposed the entire cost and expenses of opening a street, irrespective of the question whether the property was benefited by the opening of the street. The legislature of the State had not defined or designated the abutting property as benefited by the improvement, nor had the village authorities made any inquiry into the question of benefits. There having been no legislative determination as to what lands were benefited, no inquiry instituted by the village councils, and no opportunity afforded to the abutting owner to be heard on that subject, this court held that the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation, and accordingly affirmed the decree of the Circuit Court of the United States, which, while preventing the enforcement of the particular assessment in question, left the village free to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as would be found, upon due and proper inquiry, to be

equal to the special benefits accruing to the property." This language implies that the assessment in *Norwood* v. *Baker*, was without legislative sanction and hence the judgment rendered by this court; whereas, it distinctly and unmistakably appears from the opinion in that case that what the village of Norwood did was under a legislative enactment authorizing it to open the street there in question and assess the cost upon the abutting property, according to its frontage, without regard to special benefits, and without any inquiry upon that subject. And it was because and only because of this *rule* established by the legislature that the court held the assessment invalid. I submit that this case cannot be distinguished from *Norwood* v. *Baker* upon the ground that the village of Norwood proceeded without legislative sanction.

In my opinion the judgment in the present case should be reversed upon the ground that the assessment in question was made under a statutory *rule* excluding all inquiry as to special benefits and requiring the property abutting on the avenue in question to meet the entire cost of paving it, even if such cost was in substantial excess of the special benefits accruing to it; leaving Kansas City to obtain authority to make a new assessment upon the abutting property for so much of the cost of paving as may be found upon due inquiry to be not in excess of the special benefits accruing to such property. Any other judgment will, I think, involve a grave departure from the principles that protect private property against arbitrary legislative power exerted under the guise of taxation.