On Rehearing.
PROVOSTY, J.
We deem it unnecessary to add anything to what was said in the original opinion herein, except concerning the proper interpretation of section. 5, and as to the proper rule of apportionment.
[3] We think that when, in section 5, it is said that the cost of the work is to be borne by the owners of the property abutting the street to be paved “according to the front-foot rule provided for in section 5,” the intention manifestly was that the cost should be borne according to the rule 'provided in section 4. There is such a rule in section 4, and none in section 5; section 4 therefore was meant, and not section 5.
[4] Not to adopt this reading would be to leave the statute without any rule of apportionment at all in its application to streets, and the effect of this would be to render this feature of it entirely inoperative; for it is elementary in the law of taxation that the Legislature cannot authorize the imposition of a public charge of this kind upon the property of the citizen without at the same time providing a mode of apportioning it among those upon whom it is imposed.
“The requirement of apportionment is absolutely indispensable to any exercise of the power to tax. There can be no such thing as valid taxation when the burden is .laid without rule, either in respect to the subject of it or to the extent to which each must contribute.” Cooley, Taxation (2d Ed.) p. 243.
What is here said of a tax is equally applicable to a local assessment for street improvement, for such an assessment is imposed by an exercise of the power of taxation, and not by an exercise of either of the other powers of government by which the property of the citizen may be taken against his will — • the eminent domain and the police power.
“A very important species of taxation is that which is laid in the form of special assessments. * * * It is like a tax in that it is imposed under an authority derived from the Legislature * * * in that it must be apportioned by some reasonable rule among those upon whose property it is levied.” Cooley, Taxation (2d Ed.) pp. 606 and 607.
“First there must be competent legislative authority. The district of assessment must either be prescribed by the Legislature or some method of determining it must be given, and the rule of apportionment must be laid down.” Cooley, Taxation (2d Ed.) p. 653.
“The exaction of such contributions is an exercise of the taxing power in its broadest sense. There is nothing' in this case to support the assessment as an exercise of the police power or of the power of eminent domain, and unless we are to attribute it to some vagrant power-, there is no other source from which it can spring except the power of taxation.” Charnock v. Levee Dist., 38 La. Ann. 323.
In our original opinion we said that we would interpret the front-foot rule provided in section 5. But how can we interpret the front-foot rule provided in section 5 when none is there provided?
[5] The statute is express to the effect that the apportionment must be .according to a front-foot rule provided in the act itself; and we find this rule nowhere provided except in section 4. We are safe therefore in concluding that section 5 was named by mistake when section 4 was intended.
“Mere verbal inaccuracies, or clerical errors in statutes in the use of words, or numbers, or in grammar, spelling, or punctuation, will be corrected by the court whenever necessary to carry out the intention of the Legislature as gathered from the entire act.” 36 Oyc. 1126.
[6] The rule of apportionment must therefore be as provided in section 4, namely: That the total cost of the work, after deduction made of whatever part falls to the city, or'to any street railway on the street, must be paid for by the owners of real estate *503 abutting upon the street in the proportion that the frontage of the property so abutting bears to that of all the other property so abutting. So that the iDroperty owner pays, not according to the number of square feet of pavement in front of his property, but according to the frontage of his property, regardless of whether the street be wider or narrower there than elsewhere.
This rule being the one prescribed by the statute, must be followed unless it be unconstitutional, and the contention is that it is unconstitutional, because of the supposed inequality of making a lot fronting on the street at its narrow part pay as much as one fronting on the wider part.
Of this mode of apportionment Cooley on Taxation (2d Ed.) p. 644, says:
“Such a measure of apportionment seems at first blush to be perfectly arbitrary, and likely to operate in some cases with great injustice; but it cannot be denied that in the case of some improvements, frontage is a very reasonable measure of benefits; much more just than value could be; and perhaps approaching equality as nearly as any estimate of benefits made by the judgment of men. However this may be, the authorities are well united in the conclusion that frontage may lawfully be made the basis of apportionment.”
This mode of apportionment was approved in French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879.
It may be well to mention that in every case that has come up involving the legality of this mode of apportionment, and their number is so great that they might almost be said to be innumerable, the reason why the point was litigated at all was that in the particular case the said rule operated unequally. The present case presents nothing new therefore when the argument is made that if the lot- owner on the narrow part of the street were made to pay as much as the lot owner on the wider part, this rule would operate unequally.
There is nothing opposed to the foregoing in the case of Town of Minden v. Glass, 132 La. 927, 61 South. 874.
In the first place, the work there in question had been done under Act 147 of 1902, which differs from the later act under which the work in the instant case was done in this fundamental particular. That, whereas, under this former ■ law,' the determination of what street should be paved, or, in other-words, the fixing of the limits of the taxing, or assessment, district, was left to the discretion of the municipal authorities; it, under the later law, is a matter of consent on the piart of the lot owners. It is they -who, in, and by, their petition, determine what street shall be paved; or, in other words, fix the limits of the assessment district. And, of course, the assessment must be “equal and uniform throughout the territorial limits of the authority levying the” •same. Const, art. 225. It must be uniform throughout the taxing district.
In the second place, by reference to the very full statement made of the pleadings in the original opinion, and to the record and the briefs in the case, it will be seen that this question of wider and narrower street was not involved in it; and that, therefore, the expressions there made use of by the court, which seem to fit the present case, must be understood in a different sense, namely, in the sense that the proper mode of apportionment is as prescribed in said statute, and not, as there attempted, to charge each lot with the cost of the work done in front of it.
[7,8] Defendants contend that the said statute should be so interpreted as not to make it operate unequally or inequitably: and therefore should be understood as requiring that streets of different widths should be contracted for separately and not together. In other words, should' not be included in one work whereof the total cost is to be apportioned according to frontage.
*505 The statute makes no such distinction, and were the courts to make it, they would be putting into the statute an exception, or restriction, not written therein by the Legislature.
But even if the said statute were susceptible of that interpretation, the proper time for the lot owners on the narrower parts of the street to object to being included in the same contract, or work, with those on the wider parts, would be when the contract is being given out; not after the work has been completed.
This is so because the work can be done only with the consent of the lot owners, or, which is the same thing, of a majority of them. Section 2 of the act expressly so provides. And when they have thus consented to the doing of a certain work of which the cost is to be apportioned in a certain way, it is too late, after the work has been done without objection from any quarter, for any one to come and endeavor, without their consent, to change the work or the mode of apportionment. Every one of them could say: “I have never consented to this work being done according to the change which you are now asking to be made in it.” It is perfectly evident that one who has signed a petition for the paving of an entire street, the cost of the work to be apportioned according to frontage along the entire street regardless of width, cannot be said to have petitioned for the paving of only the wider, or the narrower, part of the street, or consented that the width of the street should , be taken into consideration in apportioning the cost. The rule of apportionment under the said statute being simply according to frontage, a petition for work to be done under it, means that the apportionment of the cost is to be simply according to frontage. And such was the petition in this case.
The paving work in question in this case was done under contract at so much per square yard, with nothing said as to the wider or narrower parts of the street. . Defendants would let the work stand as a whole for the purpose of ascertaining the cost per square yard, but would divide it into three parts for making payment. They do not show that the expense per square yard of paving a narrow street is the same as that of paving a wide street; or, that this work would not have cost more if instead of being let out as one it had been let out as three. So that, for all the court knows, the success, of defendants in this suit might have the effect of making the lot owners on the wider part of the street pay more for their paving than they would have had to pay if the narrower part of the street had not been included in the contract.
[9] The learned counsel for defendants say in their brief that the lot owners fronting on the narrower part of the street would never have signed the petition if they had known that the apportionment would be simply according to frontage. The answer is that no one can be allowed to plead ignorance of the law; and that, therefore, any one signing a petition to have work done under the provisions of that law, must be conclusively presumed to have known that the apportionment would be in accordance with the rule fixed in that law; i. e., that the cost of the work as a whole would be apportioned according to frontage.
[10] Passing to another point, we find that this rule of apportionment does not afford a complete guide in the present case. The cost is required to be thus apportioned according to frontage only after the cost of the street intersections has been deducted from the total cost. By an intersection is meant the space occupied by two streets at the point where they cross each other. In this case part of the paving work was of the street which runs along the four sides of Courthouse square. Four streets go into this street, open into it, but do not cross it. *507 And the question arises whether the spaces which would be occupied by these four streets if they were continued across this street constitute intersections. If they do, and the city is made to pay for them, the lot owners will be relieved to the extent of the frontage of the property on the other side of the street -opposite the heads of these abutting streets. We think a just mode of settlement is to divide this space between the two streets, so that one-half of it will be treated as constituting an intersection to be paid for by the city, and the other half as part of the street around the square, to be paid for by the lot owners.
The conclusion which we thus reach on this point disturbs the figures by which the amount claimed of the defendants has been arrived at, and necessitates a recasting of them. As w;e do not feel called upon to do this expert work, we will remand the case for that purpose.
The judgment appealed from is therefore set aside, and the case is remanded for judgment to be in due course entered in accordance with the views herein expressed. The defendant to pay the costs of this suit.
O’NIELL, J., adheres to the original opinion rendered in this case.