41 F.3d 619
 John O. ZIPPERER, Jr., an individual, Plaintiff-Appellant,
v.
CITY OF FORT MYERS, a chartered municipality and political
subdivision of the State of Florida; Fort Myers City
Council, as Governing Authority of Improvement District No.
10, Northeast Colonial Sewer and Water Assessment District;
Fort Myers City Council, as the Governing Authority of
Improvement District No. 15, Omni Interstate Park; Fort
Myers City Council, as the Governing Authority of
Improvement District No. 17; Improvement District No. 10,
Northeast Colonial Sewer and Water Assessment District;
Improvement District No. 15, Omni Interstate Park;
Improvement District No. 17; Lee County, a political
subdivision of the State of Florida; Colonial Road
Extension Improvement Special District Board, as the
Governing Authority of the Defendant Special District known
as Colonial Road Extension Improvement Special District;
Colonial Road Extension Improvement Special District,
Defendants-Appellees.
 No. 93-3546.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 3, 1995.
 
 John H. Rains, III, Annis, Mitcheel, Cockey, Edwards & Roehn, Tampa, FL, for appellant.
 John S. Turner, Lee County Attorney's Office, Fort Myers, FL, for Lee County.
 Jacqueline W. Hubbard, City of Fort Myers, City Attorney's Office, Theodore L. Tripp, Jr., Garvin & Tripp, P.A., Fort Myers, FL, for City of Fort Myers.
 Kathleen E. Moore, Office of the Atty. Gen., Tallahassee, FL, amicus, State of Fla.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT and BLACK, Circuit Judges, and YOUNG*, Senior District Judge.
 BLACK, Circuit Judge:
 
 
 1
 John Zipperer, the mortgagee of property located in Fort Myers, Florida, (the mortgaged land) brought this action against the City of Fort Myers (the City), Lee County (the County), and the districts contained therein (the Districts), (collectively, the Appellees) to challenge the lien priority of special assessments imposed on the mortgaged land. Zipperer claims that the prioritization of the special assessment liens over his mortgage violated his due process rights, because the Appellees did not give him actual notice of the imposition of these liens. The Appellees contend that the lien priority given to the special assessments did not deprive Zipperer of any property interest, and therefore, actual notice was not required before imposing and prioritizing the lien on the mortgaged land. The district court found no due process violation, and granted summary judgment in favor of the Appellees. We affirm.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 In August 1986, Zipperer loaned $8,900,000 to Gerald DeSimone. The loan was secured by a mortgage in favor of Zipperer on land which DeSimone owned in Fort Myers, Florida. Zipperer promptly recorded the mortgage in the Lee County Official Record Book. Soon after, DeSimone requested that the City of Fort Myers make certain improvements on the mortgaged land, which the City was authorized to do under Florida law.[1]
 
 
 3
 Pursuant to the powers given to it under Florida Statutes Sec. 170, the City passed resolutions to establish Districts within the City, and make improvements in the Districts. The mortgaged land was included in the Districts. According to the resolutions, the following improvements were to be made in the Districts: (1) water and sewer facilities at an estimated cost of $13,000,000; (2) roadways and paving at an estimated cost of $10,900,000; and (3) other public improvements at an estimated cost of $6,017,000. After paying for the improvements with government bonds, the City Council levied special assessments on a pro-rata acreage basis on the land located within the Districts and confirmed the assessments as first liens.
 
 
 4
 Before making the improvements, the City sent written notice to DeSimone advising him of the nature and costs of the proposed improvements, the special assessments, and his opportunity to appear before the City Council to be heard as to any issues concerning the improvements. The City did not directly notify Zipperer of the hearings or improvements, although the information was published in the local newspaper. After the improvements were confirmed, DeSimone failed to pay his pro-rata assessment installment for the improvements on the mortgaged land. In 1989, the City filed a lien on the mortgaged property for the unpaid assessments. Although the City provided DeSimone with actual notice of the filing of the lien and its priority status, it gave no notice to Zipperer.
 
 
 5
 In April 1990, Zipperer foreclosed on the mortgaged land, and subsequently purchased it. Zipperer then sued the Appellees challenging the lien prioritization of the special assessments on the mortgaged land because the Appellees did not give actual notice of the imposition to Zipperer. He claims that the special assessments and their lien prioritization impaired the value of his property interest without any opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment. Zipperer ultimately sought to have the special assessments subordinated in priority to his prior recorded mortgage.
 
 
 6
 The Appellees filed a motion for summary judgment as to the due process claim, and a motion to dismiss based on jurisdictional grounds. The district court found no violation of due process occurred, and issued an order granting summary judgment in favor of the Appellees. In this appeal, we address at length only the due process issue.[2]
 
 II. STANDARD OF REVIEW
 
 7
 We review a grant of summary judgment de novo. Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1104 (11th Cir.1990). On review, we apply the same standards that bound the district court on the summary judgment motion below. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). Any reasonable dispute of material fact must be resolved in favor of the nonmoving party. Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir.1987).
 
 III. DISCUSSION
 A. The Tax Injunction Act
 
 8
 As a preliminary matter, this court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 as a federal question action arising under the Constitution, and we reject Appellees' contention that the Tax Injunction Act, 28 U.S.C. Sec. 1341, bars federal court jurisdiction. Section 1341, which deprives federal courts of jurisdiction to enjoin, suspend or restrain the assessment, levy or collection of any tax under state law except where no plain, speedy and efficient remedy is available in state courts, is inapplicable in the instant case.
 
 
 9
 First, we note that the Florida Supreme Court has rejected the argument that special assessments are considered taxes under the Florida Constitution. Boca Raton v. State, 595 So.2d 25, 29 (Fla.1992) (declaring that "a legally imposed special assessment is not a tax"). Thus, although Appellees cite several provisions under the Florida Constitution and Florida Statutes which afford taxpayers remedies when challenging state taxes[3], these provisions afford no remedies to individuals when challenging special assessments. Consequently, Zipperer has no "plain, speedy and efficient remedy" in the Florida courts.
 
 
 10
 Second, Zipperer requests that we determine whether a lien prioritization without adequate notice violates constitutionally protected interests of a mortgagee, but he does not request that we "enjoin, suspend or restrain" the collection of any tax. See Director of Revenue, State of Colorado v. U.S., 392 F.2d 307, 311 (10th Cir.1968) (holding that the Tax Injunction Act does not bar a federal court from hearing the case where the only question is one of lien priorities and no one seeks to suspend the collection of state taxes.) For these reasons, this Court has jurisdiction over Zipperer's constitutional due process claim.
 
 B. Procedural Due Process
 
 11
 Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest. Donaldson v. Clark, 819 F.2d 1551, 1558 (11th Cir.1987) (en banc) (citing Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Thus, to determine if a procedural due process violation occurred in this case, we must resolve: (1) whether Zipperer had a constitutionally protected property interest; (2) whether he was deprived of that interest; and (3) if he was deprived of a constitutionally protected property interest, whether the Appellees failed to use constitutionally sufficient procedures before that deprivation occurred. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); Logan v. Zimmerman Brush Co., 455 U.S. 422, 432-33, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982).
 
 
 12
 1. A Mortgage is a Constitutionally Protected Property Interest.
 
 
 13
 Property interests are not created by the Constitution, but are defined by existing rules or understandings that stem from an independent source such as state law. Board of Regents v. Roth, 408 U.S. 564, 577-78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Florida courts have determined that a mortgage can be a constitutionally protected property right. In Sarasota County v. Andrews, 573 So.2d 113 (Fla. 2d DCA 1991), the court found that a county's attempt to assert that a lien created by an ordinance was superior in right to a prior recorded mortgage, was a substantial impairment of the first mortgage lien for federal and state constitutional purposes. Id. at 115. Although Sarasota was decided under a contract impairment analysis, it nevertheless stands for the proposition that a mortgagee, who is in essence a party to a security contract, has a property right in preservation of its mortgage interest. See also Mailman Development Corp. v. Segall, 403 So.2d 1137, 1138 (Fla. 4th DCA 1981) (holding that a "mortgagee should not be required to accept a substituted security interest since a mortgagee lien is a property right....").
 
 
 14
 Moreover, Florida law gives a mortgagee the right to foreclose and reforeclose its liens. Fla.Stat. Sec. 697.01 (1993). Therefore, a mortgage is a cause of action creating a lien on property. See United of Florida, Inc. v. Illini Federal Savings & Loan Association, 341 So.2d 793, 794 (Fla. 2d DCA 1977). The Supreme Court has specifically held that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). See Tulsa Collection Services v. Pope, 485 U.S. 478, 485-86, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). Thus, as a mortgagee, Zipperer has a constitutionally protected property interest in his mortgage.
 
 
 15
 2. Appellees Did Not Impair Zipperer's Property Interest
 
 
 16
 Having found that Zipperer has a constitutionally protected property interest, we must now decide whether the lien prioritization of the special assessments constitutes a deprivation or impairment of Zipperer's property interest. Zipperer argues that this case is governed by Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in which the Supreme Court set forth the broad proposition that a mortgagee is entitled to notice reasonably calculated to apprise him or her of a pending tax sale because, under Indiana law, a mortgagee possesses a protected property interest that is adversely affected by a tax sale. In so ruling, the Court reasoned that "[t]he tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors." Id. at 798, 103 S.Ct. at 2711 (emphasis added).[4] The Court accordingly held that a state may not conduct a tax sale of property without mailing notice to any interest holder, such as a mortgagee, who is reasonably identifiable in the public records. Id.
 
 
 17
 We agree that had there been a tax sale of the mortgaged property which nullified Zipperer's entire interest as mortgagee, Zipperer's interest would have been as "immediately and drastically diminished" as the mortgagee's interest in Mennonite. It is uncontroverted, however, that Zipperer, as the present landowner, will retain a significant interest in the land even after its subordination to the special assessment. Therefore, the imposition of the special assessments and their lien prioritization do not immediately and drastically diminish his interests in a manner that would implicate a Mennonite due process deprivation.
 
 
 18
 Since the Mennonite decision, neither the Supreme Court nor this Circuit have addressed whether the imposition and prioritization of special assessments on mortgaged land, as opposed to a tax sale of mortgaged land, constitute a deprivation. However, the Fifth Circuit has held in a factually similar case that the imposition of special assessments and their lien prioritization do not constitutionally impair or deprive a mortgagee of his interest in mortgaged land. Federal Deposit Ins. Corp. v. City of New Iberia, 921 F.2d 610 (5th Cir.1991).[5]
 
 
 19
 The New Iberia court emphasized that "local tax assessments would not contravene the Fourteenth Amendment unless they amounted to such an abuse as to be an outright confiscation of property." Id. at 615 (citing French v. Barbar Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901)). The court distinguished Mennonite, reasoning that Mennonite in no way suggested that a taxing authority's decision to levy special assessments and give them priority over other liens affects a mortgagee in the same way that a tax sale does.[6] New Iberia, 921 F.2d at 614. Likewise, in the instant case the government did not confiscate property; it simply imposed liens on Zipperer's property for improvements which it had already made and paid for with government bonds.
 
 
 20
 The court in New Iberia also found it specious to challenge the imposition of the special assessments where the mortgagor itself requested that the city aid in making these improvements. The court stated:
 
 
 21
 To allow the mortgagee to assert an unconstitutional taking because of a special assessment sought by the landowner would allow the mortgagee potentially to receive whatever benefit did result from the improvements without having to pay for them. Moreover, this claim by the mortgagee would place an impossible, if not absurd, burden upon the taxing authority: to police the landowner's requests for assistance with improvements so that his mortgagee will not be discomfited by ensuing special assessments. [The mortgagee's] implicit plea for governmental paternalism in an area normally controlled by sophisticated contractual relationships is as strange as it is unsupported by precedent.
 
 
 22
 Id. at 615-16.
 
 
 23
 In the instant case, as in New Iberia, the original landowner of the mortgaged land requested the improvements, and the present owner of that same land now reaps the benefits of these requested improvements. On this point, we agree with the Fifth Circuit that "a mortgagee may not insist that the taxing authority protect it from an imprudent special assessment levied because of the mortgagor's request," id. at 616, and that "if a landowner requests the improvements for which a special assessment is levied by a taxing authority, neither he nor [the mortgagee] may challenge the legislature's ascription of benefit to the landowner." Id. Rather, a special assessment lien prioritization constitutes a constitutional deprivation only if it is so palpably punitive or arbitrary as to confer no benefit on the landowner, or 'force[s] a landowner to make an improvement that, while valuable to others, is useless to him'. Id. (quoting Furey v. City of Sacramento, 780 F.2d 1448, 1454 (9th Cir.1986)).
 
 
 24
 Here, it is uncontroverted that Zipperer is the owner of the subject property. It is also uncontroverted that as a result of the Appellees' actions, the property now has water and sewage facilities, roadways and paving, and other valuable improvements, all of which are far from "useless" to Zipperer. Zipperer's property has obviously benefitted from the improvements made and paid for by the Appellees. Therefore, we hold that the Appellees' imposition and prioritization of special assessment liens on the mortgaged land did not deprive Zipperer of his interest as a mortgagee. Any other holding would allow Zipperer to foreclose on an improved piece of property, ignore the special assessment liens, reap the benefits of the improvements, and not have the responsibility of paying for them. Due process does not protect such interests.[7]
 
 IV. CONCLUSION
 
 25
 We hold that the Appellees' imposition and prioritization of the special assessment liens on the mortgaged land do not deprive Zipperer of his property interest as a mortgagee. Therefore, the Appellees did not violate Zipperer's constitutional due process rights and the district court's opinion is:
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 Specifically, Chapter 170 of the Florida Statues, entitled "Supplemental and Alternative Method of Making Local Municipal Improvements," provides a scheme for local governments to provide public improvements and methods of payment for those improvements
 Florida Statutes Sec. 170.01 (1993) provides that a municipality may provide for the construction of public improvements, and "provide for the payment of all or any part of the costs of any such improvements by levying and collecting special assessments on the abutting, adjoining, contiguous, or other specially benefited property."
 Florida Statutes Sec. 170.02 states that special assessments should be assessed upon the property benefitted by the improvements in proportion to the benefits derived from the improvements.
 Florida Statutes Sec. 170.07 requires that before these improvements or assessments are confirmed, ten days' written notice must be given to all property owners advising them of the proposed imposition of the special assessment liens, the nature and cost of the improvements, and a hearing time and place where the owners could be heard by the municipality regarding these issue. Although the statutes do not require a municipality to give actual notice of the proposed improvements or the hearings to those who are not property owners, it does require that the municipality publish notice of the hearings and proposed improvements. Id.
 Florida Statutes Sec. 170.09 provides that once confirmed, these special assessments constitute liens on the improved property, which are co-equal with the lien of other taxes and superior to all other liens, titles, and claims until paid.
 
 
 [2]
 The disposition of the due process issue makes it is unnecessary to reach the other issues raised by the parties on appeal
 
 
 [3]
 Florida Constitution, Article V, Sec. 20(c)(3), grants Florida circuit courts jurisdiction to hear challenges to any state tax
 Florida Statutes Sec. 72.011 (1988) and Sec. 86.011 (1987) give Florida circuit courts the power to issue declaratory and injunctive relief in tax cases.
 Florida Statutes Sec. 215.26 (1989) gives Florida taxpayers the right to seek a tax refund from the state.
 Florida Statutes Secs. 194.171-194.231 (1993) provide a scheme to contest the imposition of taxes.
 
 
 [4]
 Likewise, Florida courts have found a constitutional impairment where the alleged deprivation causes "immediate diminishment" in the value of the interest, or where the interest would be entirely eliminated. Sarasota County v. Andrews, 573 So.2d 113, 115 (Fla. 2d DCA 1991)
 
 
 [5]
 In New Iberia, assessments were based on the proportion of land abutting the proposed improvements. Id. at 612. In the instant case, assessments were made based on acreage within the districts. At oral argument, Zipperer maintained that the different assessment methods were a fundamental distinction between the two cases, because Zipperer's costs in relation to his benefits were higher than those of the mortgagee in New Iberia. However, the manner in which a municipality chooses to assess the costs and benefits of public improvements is discretionary under Florida law. See Fla.Stat. Sec. 170.02 (1993). We find it inappropriate to scrutinize the exact costs and benefits of municipal improvements in a constitutional deprivation analysis and, therefore, this distinction has no bearing on the outcome of the case. See New Iberia, 921 F.2d at 614 (stating that the parties' emphasis on precise measurement of the costs and benefits of the municipal improvements misplaces the focus of a constitutional analysis)
 
 
 [6]
 Application of the Mennonite decision has also been narrowed by the Eleventh Circuit in FDIC v. Morrison, 747 F.2d 610 (11th Cir.1984), cert. denied, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). In Morrison, this Court held that under Alabama law, a mortgagor suffers no constitutionally protected property deprivation when the mortgagee, using Alabama statutory procedures, foreclosed within the contractual terms of the mortgage. Id. at 616. The Court observed that the mortgagor lost nothing by the mere fact that the foreclosing mortgagee acted in observance of its congressionally mandated purpose and, therefore, suffered no deprivation. Id. In so observing, the Court noted that "Mennonite, which construes a mortgagee's rights in a tax sale under Indiana law, offers us little guidance in construing a mortgagor's rights in a contractual foreclosure sale under Alabama law." Id. Likewise, we are not bound by the Mennonite decision in construing a mortgagee's rights with respect to special assessments levied on improved land which the mortgagee now owns
 
 
 [7]
 Because there is no constitutional due process issue, it is unnecessary for us to decide whether the City's notice procedure was adequate